UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ERIC S. VAN RAVENSWAAY,<br><br>    Plaintiff,<br><br>    v.<br><br>JANET NAPOLITANO, Secretary of the Department of Homeland Security, *et al.*,<br><br>    Defendants. | Civil Action No. 08-1455 (CKK) |

**MEMORANDUM OPINION**
(May 4, 2009)

Plaintiff Eric van Ravenswaay, a resident of Suriname, has brought this action seeking relief in connection with the decision by the United States Consulate in Suriname to deny his application for a non-immigrant B-1 visa to enter the United States. Defendants–who include Janet Napolitano, Secretary of the United States Department of Homeland Security; Hillary Clinton, Secretary of the United States Department of State; Eric Holder, United States Attorney General; Lisa Bobbie Schreiber Hughes, United States Ambassador to Suriname; and three consular officers employed by the United States Embassy in Suriname–have moved to dismiss Plaintiff's Amended Complaint for lack of subject-matter jurisdiction.[1] After reviewing the parties' submissions, relevant case law and applicable statutory authority, the Court finds that it lacks subject-matter jurisdiction based on the numerous and insurmountable legal deficiencies associated with Plaintiff's Amended Complaint. Accordingly, the Court shall GRANT Defendants' [9] Motion to Dismiss, for the reasons that follow.

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), the Court has automatically substituted the names of these officials for their predecessors.

## I. BACKGROUND

On March 26, 2004, Plaintiff Eric van Ravenswaay submitted an application for a B-1 nonimmigrant visa to enter the United States "for business purposes." Compl., Ex. 3 at 1 (9/10/07 Letter from Plaintiff to the U.S. Embassy in Suriname).[2] The U.S. Consulate in Suriname denied his visa request on March 30, 2004, due to ineligibility under Section 212(a)(2)(C) of the Immigration and Nationality Act, 8 U.S.C. § 1182(a)(2)(c) (relating to illicit trafficking of a controlled substance). *See* Compl., Ex. 1 (5/28/04 Letter from Embassy to Plaintiff denying his visa application).

Plaintiff disputed the grounds for denial in an April 28, 2004 letter to the Suriname Ambassador and a May 11, 2004 e-mail to the embassy. *Id.* In his April letter, he also requested a "waiver" of the denial pursuant to 8 U.S.C. § 1182(d)(3)(a). *Id.* In a response dated May 28, 2004, the Vice Consul at the Embassy in Suriname stated that the consular section was "processing" the waiver application and that it would "request[] consideration of [the] waiver request from the U.S. Department of State." *Id.* On February 7, 2006, Plaintiff wrote again to inquire about his status. *See* Compl., Ex. 2 (3/28/06 Letter from Embassy to Plaintiff). A March 28, 2006 communication from the Consulate explained that the waiver request had been "disapproved" by the Department of State and had been forwarded on to the Department of Homeland Security, from whom the Consulate was still awaiting a reply. *Id.* Plaintiff addressed a final letter to the Consulate on September 10, 2007, expressing frustration with his denial and

---

[2] On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1), the Court may consider undisputed record evidence, such as Plaintiff's letters to the United States embassy in Suriname that were attached to his Complaint. *See Kouty v. Martin*, 530 F. Supp. 26, 84 (D.D.C. 2007).

stating, among other things, that the denial was "based on completely wrong information." Compl., Ex. 3 at 2 (9/10/07 Letter from Plaintiff to the U.S. Embassy in Suriname). On October 19, 2007, Ambassador Lisa Bobbie Schreiber Hughes informed Plaintiff that, after having contacted the Admissibility Review Office of the Department of Homeland Security, the Consulate's "final decision" would be a denial of his application. Compl., Ex. 5 (10/19/07 Letter from Embassy to Plaintiff). Plaintiff's Opposition to Defendants' Motion to Dismiss also asserts that Plaintiff's counsel submitted a second request for a waiver in July 2008, which was refused and/or not adjudicated because the first waiver had been submitted to the consulate and denied. *See* Pl.'s Opp'n at 4.

Plaintiff filed his Complaint in this Court on August 21, 2008, and an Amended Complaint on August 28, 2008, which named several additional Defendants. On January 21, 2009, Defendants filed a Motion to Dismiss for lack of subject-matter jurisdiction. Plaintiff filed an Opposition on February 3, 2009, and Defendants submitted a Reply on February 10, 2009.[3] The Motion to Dismiss is now fully briefed and ripe for decision.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(1), the plaintiff bears the burden of establishing that the court has jurisdiction. *Grand Lodge of Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13 (D.D.C. 2001) (a court has an "affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority"); *see also Pitney Bowes, Inc. v. U.S. Postal Serv.*, 27 F. Supp. 2d 15, 19 (D.D.C. 1998). A court must accept as true all factual

---

[3] The Court notes that Plaintiff filed a second Opposition on February 5, 2009, for reasons that he did not explain. The second Opposition appears to be identical to the first except that it is missing page two.

allegations contained in the complaint when reviewing a motion to dismiss pursuant to Rule 12(b)(1), and the plaintiff should receive the benefit of all favorable inferences that can be drawn from the alleged facts. *See Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993); *Koutny v. Martin*, 530 F. Supp. 2d 84 (D.D.C. 2007) ("a court accepts as true all of the factual allegations contained in the complaint and may also consider 'undisputed facts evidenced in the record'") (internal citations omitted). However, "'plaintiff's factual allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion' than in resolving a 12(b)(6) motion for failure to state a claim." *Grand Lodge*, 185 F. Supp. 2d at 13-14 (quoting 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1350).

### III. DISCUSSION

The Immigration and Nationality Act of 1952, 8 U.S.C. § 1001, *et seq.* ("INA"), governs visa processing and confers "upon consular officers *exclusive authority* to review applications for visas." *Saavedra Bruno v. Albright*, 197 F.3d 1153, 1156-57 (D.C. Cir. 1999) (emphasis added). Consistent with consular officers' exclusive authority in this area, the Court of Appeals for the District of Columbia Circuit has explained that judicial review of a visa determination is precluded based on the doctrine of "consular non-reviewability." *Id.* at 1162 ("a consular officer's decision to issue or withhold a visa is not subject to judicial review, at least unless Congress says otherwise"). "This rule applies even where it is alleged that the consular officer failed to follow regulations, where the applicant challenges the validity of the regulations on which the decision was based, or where the decision is alleged to have been based on a factual error." *Chun v. Powell*, 223 F. Supp. 2d 204, 206 (D.D.C. 2002) (internal citations omitted). *See*

*also El-Hadad v. United States*, 377 F. Supp. 2d 42, 46 (D.D.C. 2005) ("[i]t is "not within the province of any court, unless expressly authorized by law, to review the determination of the political branch of the Government to exclude a given alien").

Plaintiff attempts to circumvent this doctrine by arguing that he "is not challenging the discretion of [the] consul, but rather the authority of the Secretary of State, per *Mulligan v. Schultz*, 484 F.2d 655 (5th Cir. 1998), and *Patel v. Reno*, 134 F.3d 929 (9th Cir. 1997)." Pl.'s Opp'n at 6, 8.  As an initial matter, this argument is contradicted by the first paragraph of Plaintiff's Amended Complaint, which specifically states that he is seeking judicial review regarding the actions of the consul.  *See* Am. Compl. ¶ 1 ("[t]his action is brought . . . to challenge the authority of the consul to take or fail to take an action . . .").[4]  In any event, Plaintiff never explains what "authority" he seeks to challenge.  To the extent he is referring to the adjudication of his visa application and initial waiver request, his argument is foreclosed by D.C. Circuit precedent.  *See Saavedra Bruno*, 197 F.3d at 1157 ("[t]he INA confers upon consular officers exclusive authority to review applications for visas, precluding even the Secretary of State from controlling their determinations").  To the extent Plaintiff is referring to his second request for a waiver (which is not pled in his Amended Complaint but is raised in his Opposition to Defendants' Motion to Dismiss), he points to no authority–statutory other otherwise–that would require Defendants to adjudicate a second waiver request after Defendants have extensively reviewed and rejected the first.

---

[4] Plaintiff's suggestion that the consul failed to take action on his visa application is itself inexplicable given the letters attached to Plaintiff's Complaint demonstrating that the consul *did* take action on Plaintiff's visa application and denied the same.  *See, e.g.*, Compl., Ex. 5 (10/19/07 Letter from Embassy to Plaintiff).

The cases cited by Plaintiff provide no support for his arguments, as neither involves a situation remotely similar to the facts of this case. *See Mulligan*, 484 F.2d at 657 (finding jurisdiction where the plaintiff challenged the Secretary of State's authority to place temporal limits on the processing of visa applications); *Patel*, 134 F.3d at 931-32 (finding jurisdiction where a "consular office . . . [failed] to act on visa applications" after plaintiffs had waited eight years but never received any visa application results). Ultimately, courts have repeatedly rejected "recasting" of complaints by plaintiffs to "circumvent this well-established doctrine of consular nonreviewability by claiming that they are not seeking a review of a consular officer's decision," *Chun*, 223 F. Supp. 2d at 206-07, and have applied the doctrine of consular non-reviewability in suits against the Secretary of State and consulates alike. *See, e.g.*, *Saavedra Bruno v. Albright*, 197 F.3d at 1159-60 (applying doctrine in suit against Secretary Madeleine K. Albright); *Chun*, 223 F. Supp. 2d at 207 (applying doctrine in suit against Secretary Colin L. Powell). Accordingly, the Court finds that the doctrine of consular non-reviewability applies to the claims asserted in this case.

Plaintiff appears to raise three other arguments that the Court shall briefly address and reject as meritless. First, Plaintiff argues that he is entitled to a waiver of his visa denial or, alternatively, reconsideration and review of the denied waiver. *See* Pl.'s Opp'n at 7, 9. This argument fails because the INA expressly precludes judicial review of these types of discretionary decisions. *See* 8 U.S.C. § 1252(a)(2)(B)(ii) (providing that "no court shall have jurisdiction to review . . . any [] decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this title to be in the discretion of

6

the Attorney General or the Secretary of Homeland Security . . .").[5]  Second, Plaintiff argues that he is entitled to an advisory opinion from the Secretary of State.  Pl.'s Opp'n at 2, 6.  This argument fails because an advisory opinion is an optional step in the visa decision-making process and is neither necessary nor required for a consular determination.  *See* 22 C.F.R. § 41.121(d) ("[t]he Department [of State] . . . *may* furnish an advisory opinion to the consular officer") (emphasis added).  Third, Plaintiff argues that he has not been fully informed of the basis for his denial.  Pl.'s Opp'n at 7.  This argument fails because there is no statutorily mandated requirement that Plaintiff receive a more fulsome explanation for the denial of his application.  *See Saavedra Bruno*, 197 F.3d at 1157-58 ("the consular officer [must] inform[] the applicant that the denial rested on a finding of ineligibility, but the officer is not required to disclose the existence or details of the INS [narcotics-trafficker] lookout entry").

Finally, even if Plaintiff could surmount these legal deficiencies, the Court would still lack jurisdiction over Plaintiff's Amended Complaint because Plaintiff cannot establish standing and has not raised a proper cause of action in connection with the relief he has sought.  With respect to standing, there is a long line of cases explaining that non-resident aliens lack standing to challenge the determinations associated with their visa applications, which belong to the political and not judicial branches of government.  *See Kleindienst v. Mandel*, 408 U.S. 753, 762 (1972) ("[defendant] personally, as an unadmitted and nonresident alien, had no constitutional right of entry to this country"); *Chun*, 223 F. Supp. 2d at 207 ("an unadmitted nonresident alien . . . has no standing to challenge the denial of her entry into the United States or to require the

---

[5] The Court also notes, contrary to Plaintiff's argument, the consulate did, in fact, forward his waiver application to the Department of State and the Department of Homeland Security for review and reconsideration.  *See* Compl., Ex. 5 (10/19/07 Letter from Embassy to Plaintiff).

defendant to follow the Attorney General's interpretation of law or to appoint a General Counsel"). Although this argument was raised by Defendants, Defs.' Mot. at 9, Plaintiff's Opposition makes no attempt to distinguish these cases.

With respect to Plaintiff's causes of action, Plaintiff identifies four statutes that he believes support jurisdiction and his requests for relief: the general federal-question statute, 28 U.S.C. § 1331; the Declaratory Judgment Act, 28 U.S.C. § 2201; the Administrative Procedure Act, 5 U.S.C. § 701; and the Mandamus Act, 28 U.S.C. § 1361. *See* Pl.'s Opp'n at 5. None of these statutes provide Plaintiff with a proper cause of action in this case. The general federal-question statute does not itself give rise to a right for relief. *See Mead Corp. v. United States*, 490 F. Supp. 405, 407 (D.D.C. 1980) ("section 1331 does not itself create substantive rights or causes of action . . . but only confers jurisdiction on the district courts to hear certain cases that are supported by an independently created substantive cause of action"), *aff'd*, 652 F.2d 1050, 1053 (D.C. Cir. 1980) ("[w]e agree with the district court that [1331 does not] provide[] an independent basis of federal jurisdiction"). The D.C. Circuit has specifically held that the Administrative Procedure Act provides no basis for challenging consular visa decisions. *Saavedra Bruno*, 197 F.3d at 1158. And neither the Mandamus Act nor the Declaratory Judgment Act are cognizable where, as here, Plaintiff has no clear right to relief. *See, e.g.*, *In re Medicare Reimbursement Litig.*, 414 F.3d 7, 10 (D.C. Cir. 2005) (holding that mandamus is cognizable only where "the plaintiff has a clear right to relief"); *Schilling v. Rogers*, 363 U.S. 666, 677 (1960) (holding that the Declaratory Judgment Act "presupposes the existence of a judicially remediable right"). Accordingly, none of the jurisdictional statutes cited by Plaintiff give rise to an appropriate cause of action in connection with the relief he has sought.

## III. CONCLUSION

For the reasons set forth above, the Court shall GRANT Defendants' Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(1). An appropriate Order accompanies this Memorandum Opinion.

Date: May 4, 2009

>                              */s/*
>                              **COLLEEN KOLLAR-KOTELLY**
>                              United States District Judge